## APPEAL OF STAMEY-MACKEY CONSTRUCTION CO.

Docket No. 1271.  Decided July 26, 1926.

Under section 326(a) of the Revenue Act of 1918, interest-bearing demand promissory notes of solvent and responsible makers, actually and *bona fide* paid in for preferred stock of a Kansas corporation, constitute invested capital of such corporation at the time paid in to the extent of their actual cash value.

*H. L. Washington, Esq.*, for the petitioner.

*R. A. Littleton, Esq.*, and *B. G. Simpich, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the fiscal year ended March 31, 1921, in the amount of $6,553.66, of which $5,192.66 is in controversy. The only issue is the right of the petitioner to include in invested capital two notes aggregating $125,000.

### FINDINGS OF FACT.

The taxpayer is a Kansas corporation with its principal office at Hutchinson. It was organized April 1, 1919, and took over the assets and liabilities of a partnership.

At that time it was in need of funds in excess of the amount that could legally be loaned to it by its bank. In order to secure the desired funds it issued all of its authorized preferred stock, in the amount of $125,000, to Messrs. Stamey and Mackey, who had been members of the predecessor partnership. In exchange for this stock Stamey and Mackey, who were solvent and financially responsible, each gave the petitioner his two-year, interest-bearing note for $62,500, which the petitioner entered in its notes receivable account. The petitioner turned these notes over to its bank as collateral for the securing of loans. The makers of the notes, Stamey and Mackey, endorsed and turned over to the bank, as collateral security, stock of another corporation.

The bank held the notes for over two years and from time to time made loans to the petitioner with the notes as security. The maximum amount loaned was $133,000.

No interest was ever paid on the notes. By the time they became due the obligations on them had been so reduced that the bank made no demand for payment of them. Sometime in 1921, the notes were turned back to the petitioner, who canceled them and called in and canceled the preferred stock. No dividends were ever paid on the preferred stock.

### OPINION.

ARUNDELL: The petitioner claims the right to include in invested capital the amount of $125,000 represented by the notes of Stamey and Mackey, for which preferred capital stock of the petitioner was issued.

Section 326(a) (2) of the Revenue Acts of 1918 and 1921 provides that "invested capital" means the "actual cash value of tangible property * * * bona fide paid in for stock or shares * * *." That notes are tangible property is settled by the provisions of section 325(a) of the 1918 and 1921 Acts, and we have then only to determine the actual cash value of the notes and whether they were *bona fide* paid in for stock.

Prior to the incorporation of the petitioner the bank had loaned considerable sums to Stamey and Mackey on their personal notes and continued to do so after the notes here involved were turned back to the petitioner. An officer of the bank testified that he considered the notes good and collectible. The bank in fact did loan to petitioner various sums based on the security of the notes, the maximum amount loaned at one time being $133,000. As further security there was deposited by Stamey and Mackey certain stock in a hotel company, but the record does not disclose its value. We are satisfied from the entire record that Stamey and Mackey were entirely solvent and that the notes were collectible and worth their face value.

No citation has been furnished us nor can we find anything in the statutes of the State of Kansas which forbids the acceptance by corporations in that State of notes in payment of capital stock. Section 2148 of the General Statutes of Kansas (McIntosh 1915) provides:

The board of directors or trustees of any corporation may require the subscribers to capital stock of the corporation to pay the amount by them respectively subscribed, in such manner and in such installments as may be required by the by-laws.

It was not until 1923 that any regulation of the receipt of obligations for capital stock was made by statute. (See Revised Statutes of Kansas, 1923, sec. 17–1219.)

The Commissioner urges that the fact that the stock was retired when the financial condition of the taxpayer rendered unnecessary the further use of the notes indicates that the notes were not "bona fide paid in for stock or shares." We considered a similar proposition in the *Appeal of American Steel Co.*, 1 B. T. A. 839, and we said there, at p. 845,

The mere fact of cancellation of the notes, and retirement of the stock by the corporation several years later, in the absence of any circumstance to indicate bad faith, can not justify the disallowance for invested capital purposes of the actual cash value of the notes at the time paid in.

In the *Appeal of Cross Mountain Coal Co.*, 2 B. T. A. 587, a subsidiary of the petitioner accepted 6 per cent. demand notes in exchange for stock. Some time later the corporation found it would have no need for the money represented by the notes and thereupon canceled them, without having made any use of them. In that case the inclusion of the notes in invested capital was allowed. The case for the petitioner in the present appeal is stronger than in the *Cross Mountain Co.* appeal, for here we have the petitioner making use of the notes to increase its working capital. There is nothing in the record to show that this transaction was not entirely in good faith between the petitioner and the holders of its preferred stock; that it was not a real transaction, or that it was not entered into for the best interests of the petitioner. *Appeal of Hewitt Rubber Co.*, 1 B. T. A. 424, 429.

We conclude from the facts that the notes here involved had an actual cash value of $125,000 and that they were *bona fide* paid in for that amount of preferred stock of the petitioner. The petitioner is accordingly entitled to include the face amount of the notes, $125,000, in invested capital for the fiscal year ended March 31, 1921.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*